# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

April 2, 2015

Lyle W. Cayce
Clerk

—————

No. 14-10631

—————

CAMPBELL HARRISON & DAGLEY, L.L.P.; CALLOWAY, NORRIS, BURDETTE & WEBER, P.L.L.C.,

> Plaintiffs - Appellants Cross-Appellees

v.

ALBERT G. HILL, III, individually and on behalf of N. Hill; C. Hill; the unborn and unascertained beneficiaries of the Margaret Hunt Trust Estate and/or the Haroldson Lafayette Hunt, Jr Trust Estate who descend from Albert G. Hill, III and/or Erin Hill...; ERIN HILL, individually and on behalf of N. Hill; C. Hill; the unborn and unascertained beneficiaries of the Margaret Hunt Trust Estate and/or the Haroldson Lafayette Hunt, Jr Trust Estate who descend from Albert G. Hill, III and/or Erin Hill...,

> Defendants - Appellees Cross-Appellants

———————————

Appeals from the United States District Court
for the Northern District of Texas

———————————

Before BARKSDALE, SOUTHWICK, and HIGGINSON, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

Primarily at issue in this challenge to the district court's vacating most of an arbitration award, made pursuant to Texas law, is whether the court misapplied the required, very deferential standard of review. Law firms Campbell Harrison & Dagley, L.L.P. (CHD), and Calloway, Norris, Burdette & Weber,

No. 14-10631

P.L.L.C. (CNBW) (collectively, the firms), challenge the court's partial vacatur of the award, rendered pursuant to a fee agreement (combining a high hourly-rate fee and a low-percentage contingency fee), which governed the firms' representation of Albert G. Hill, III, and his wife, Erin Hill (the Hills).  After arbitrating a dispute over the requested payment to the firms under the fee agreement, the arbitrators awarded them approximately $28 million.  Although the district court, *inter alia*, enforced the hourly-rate fee award, it vacated the contingency-fee award as unconscionable.  AFFIRMED IN PART; REVERSED AND RENDERED IN PART; REMANDED.

## I.

Underlying this action is the Hills' claimed interest in several trusts established by Hill's father, H.L. Hunt.  The Hills retained CHD and CNBW, in October 2008 and March 2009, respectively, to represent them in 16 litigation matters relating to the trusts and other disputes.

The Hills entered into separate (the second fee agreement incorporates the first by reference) hybrid-fee agreements with the firms (the fee agreement).  The fee agreement provided for:  hourly-rate attorney's fees, with rates between $250 and $545 an hour; and an undivided 15 percent interest in the Hills' "gross recovery" resulting from any final judgment or settlement.  "Gross recovery" was defined as, *inter alia*, "the value on the date of Resolution of any and all assets, cash or non-cash consideration distributed or to be distributed" to the Hills, from two trusts, and from any other source "in connection" with the resolution of any matters in which the firms represented the Hills.  The hourly-rate fees were to be paid "in good faith as soon as is *financially practicable* and, in no event, later than the date upon which [the Hills] (or any one or more of them) begin to receive distributions of income and/or principal pursuant to any Resolution". (Emphasis added.)  The agreement further specified that 30 percent of any distributions would be allocated toward payment of the hourly-rate fees.

No. 14-10631

Regarding possible termination of the firms' representation, the fee agreement provided:

> [The Hills] may terminate the legal representation provided for in this Agreement by written notice via certified mail; provided however, that the *attorneys' fees* incurred and payable under this Agreement *on an hourly rate basis* or as awarded by a Court as provided herein *shall remain payable and, in the absence of good cause for termination, [the firms] shall be entitled to the percent of Gross Recovery provided by paragraph 2 of this Agreement.*

(Emphasis added.)  Further, the agreement provided:  it was governed by Texas law; and disputes arising under, or in connection with, the agreement would be subject to resolution by binding arbitration before a panel of three arbitrators pursuant to, *inter alia*, the Texas General Arbitration Act (TGAA), Tex. Civ. Prac. & Rem. Code § 171.001 *et seq*.

The Hills terminated the firms in November 2009.  (Good cause *vel non* for their termination is not at issue.)  After having retained new counsel, the Hills, in May 2010, settled globally for approximately $188 million the matters for which they had been represented by the firms.  After the firms asserted their rights under the agreement, the Hills refused to make payment.

After the parties were unable to resolve their dispute, the district court, in February 2011, granted the firms' motion to compel arbitration.  In September 2012, pursuant to the TGAA, the Hills arbitrated with the firms their rights to payment under the fee agreement.  The firms sought enforcement of it pursuant to its terms; the Hills claimed, *inter alia*, the agreement was unconscionable and void as a matter of public policy.

The arbitration hearing covered nine days. That November, the arbitrators determined, *inter alia*:  the Hills entered into the fee agreement "freely and knowingly, without duress or mistake"; the agreement was neither unconscionable nor ambiguous; and it was fair and enforceable.  In support of their concluding the agreement was not unconscionable, the arbitrators found:

3

the Hills were sophisticated parties, because they were "already familiar with such [fee] agreements"; Albert Hill "was a well-educated, sophisticated, frequent and experienced consumer of legal services"; and the agreement was entered into after "a period of fairly intensive negotiations". Additionally, the arbitrators found that, during and after those negotiations, the Hills had been "strongly encouraged to consult with independent counsel", and that "some evidence" showed they had done so. Regarding unconscionability *vel non*, the arbitrators concluded: "There is nothing about a relatively high hourly rate schedule, uncertain as to time of payment, and/or a relatively low contingent percentage, when the prospect of recovery is plenty uncertain, that should be offensive to a competent lawyer, a reasonable client, or an overall traditional public policy of fairness."

The arbitrators awarded CHD and CNBW approximately $3.15 million and $152,000, respectively, in hourly-rate fees; and, as provided in the contingency-fee portion, awarded the firms, jointly, 15 percent of the total settlement, approximately $25 million. The arbitrators also awarded the firms: approximately $6.6 million for their reasonable attorney's fees incurred in arbitration; roughly $117,000 in reimbursements for other fees, administrative expenses, and arbitrators' compensation; and pre- and post-judgment interest of five percent per annum until the award was satisfied.

In district court in November 2012 (the month in which the award was made), the firms moved to confirm, and the Hills moved to vacate, the award. The Hills advanced their unconscionability and public-policy claims presented in arbitration. They also claimed, *inter alia*, the arbitrators were not impartial and exceeded the scope of their authority.

The court rejected, *inter alia*, the claims of evident partiality. *Campbell Harrison & Dagley, L.L.P. v. Hill*, No. 3:12-CV-4599-L, slip op. at 6–13, 25–27 (N.D. Tex. 28 May 2014) (memorandum opinion and order) [hereinafter *Hill*]. On the other hand, the court vacated the contingency-fee portion of the award on

public-policy grounds, holding that portion unconscionable. Although recognizing that hybrid-fee-agreement contracts are not *per se* violative of Texas law regarding the reasonableness of attorney's fees, the court noted the total award must comport with the factors listed in Texas Disciplinary Rules of Professional Conduct 1.04. Those factors include:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
> (3) the fee customarily charged in the locality for similar legal services;
> (4) the amount involved and the results obtained;
> (5) the time limitations imposed by the client or by the circumstances;
> (6) the nature and length of the professional relationship with the client;
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
> (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

Tex. Disc. Rules of Prof. Conduct R. 1.04(b)(1)–(8).

The court concluded the combination of a high hourly rate and a contingency fee was unconscionable because it "does not compensate [the firms] for the value of their legal work or the risk of nonpayment". *Id.* at 21. It ruled: the resulting award is "far in excess of what is reasonable and customary"; and "[p]ermitting a fifteen percent contingency fee [in this instance] flies in the face of the well established legal principles that authorize contingency fees, as the attorneys' fees do not compensate [the firms] for any risk that they [would] receive no payment whatsoever". *Id.* at 22.

Finally, the court discounted the arbitrators' finding the fee agreement was entered into knowingly, stating:

5

> That the Hills understood the nature of the agreements they entered into does not establish that the agreements were themselves fair and reasonable. . . . A client can agree to a contract provision with full understanding of its meaning and the contract can still be unconscionable and violate public policy. . . . [The firms] have failed to prove that a competent lawyer could form a reasonable belief that the fee arrangements, at the time they were entered into, with respect to the fifteen percent contingency fee, were reasonable.

*Id.* at 25.

In addition to its vacating the award under the contingency-fee portion of the agreement, the court also: vacated and remanded to the arbitrators the award of attorney's fees incurred by the firms in conjunction with the arbitration; vacated and remanded the award of the firms' prevailing-party fees, expenses, and arbitrators' compensation; vacated the pre-judgment interest as to the vacated portion of the award; and vacated the award's providing a five-percent rate for post-judgment interest. *Id.* at 35–36. The court enforced the portion of the award for the hourly-rate-fee amount and pre-judgment interest, at a rate of five percent, for that amount. *Id.*

## II.

As stated, Texas law controls. The firms claim the court erred, *inter alia*, in: holding the fee agreement unconscionable under Texas law; vacating the award based on an asserted incomplete record provided by the Hills; and rendering judgment on the contingency-fee award, as opposed to remanding the matter to the arbitrators. On the other hand, the Hills claim the court erred in enforcing the hourly-rate fee award. (Because, as discussed *infra*, the district court erred by applying improperly the standard governing review of an arbitration award under the TGAA, it is unnecessary to address the parties' other claims.)

A court's decision to confirm or vacate an arbitration award is reviewed *de novo*, but, such review "is extraordinarily narrow" and "[e]very reasonable

No. 14-10631

presumption must be indulged to uphold the arbitrator's decision". *Forest Oil Corp. v. El Rucio Land & Cattle Co., Inc.*, 446 S.W.3d 58, 75 (Tex. App. 2014) (citations omitted). Because the parties contracted for the TGAA to govern the fee agreement, the agreement is analyzed pursuant to that statute. *See, e.g., Gateway Techs., Inc. v. MCI Telecomms. Corp.*, 64 F.3d 993, 997 (5th Cir. 1995), *abrogated in part by Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 589–90 (2008). Under Texas law, review of an arbitration award is so limited that an award may not be vacated even if there is a mistake of fact or law. *E.g., Universal Comp. Sys., Inc. v. Dealer Solutions, L.L.C.*, 183 S.W.3d 741, 752 (Tex. App. 2005). Along that line, a court "may not substitute [its] judgment for that of the arbitrators merely because [it] would have reached a different decision". *Humitech Dev. Corp. v. Perlman*, 424 S.W.3d 782, 790 (Tex. App. 2014).

## A.

The TGAA provides that a court shall confirm an arbitrator's award "[u]nless grounds are offered for vacating, modifying, or correcting" it. Tex. Civ. Prac. & Rem. Code § 171.087. Such grounds are provided both by statute, and include, *inter alia*, corruption, fraud, *evident* partiality, and the arbitrators' exceeding their powers, *id.* § 171.088, and by common law, such as "manifest disregard of the law, gross mistake, and an award that violates public policy", *Perlman*, 424 S.W.3d at 794. (In *Hall Street Associates*, the Supreme Court eliminated all non-statutory grounds for vacating arbitration awards under the Federal Arbitration Act. 552 U.S. at 589–90. The firms claim *Hall Street* likewise eliminated common-law grounds for vacatur under the TGAA. The Texas Supreme Court has not spoken on this issue; and, relying on *Perlman*, the district court ruled common-law grounds for vacatur survived *Hall Street*. Because our decision turns on misapplication of the standard of review, we need not decide this issue.)

Vacating an award on public-policy grounds requires "an extraordinary case in which the award clearly violates carefully articulated, fundamental policy".

7

*CVN Grp., Inc. v. Delgado*, 95 S.W.3d 234, 239 (Tex. 2002). For satisfying that standard, the policy must be "well defined and dominant" and not derived "from general considerations of supposed public interests". *Id.* at 238–39 (citation and quotation marks omitted).

The firms challenge the court's vacatur of the contingency-fee portion of the award based on its concluding the fee agreement was unconscionable. They contend primarily that the court's doing so required it to reject the arbitrators' determinations and substitute its judgment. According to the firms, the court failed to apply properly the highly deferential standard of review for arbitration awards under the TGAA.

The district court misapplied that standard. In particular, it rejected the arbitrators' determination that "the prospect of recovery [was] plenty uncertain", finding instead that "[t]here was nothing contingent about [the firms'] recovery of their attorneys' fees". *Hill*, slip op. at 24. The court specifically rejected the total-fee amount based on its inclusion of the contingency-fee portion. As the court interpreted the fee agreement, the contingency fee constituted an "*unearned* payment" in the light of the non-contingent nature of the hourly-rate fees, and, as a result, made the fee agreement unconscionable. *Id.* at 22, 24 (emphasis in original) ("The Hills would owe high hourly rates regardless of whether they ultimately prevailed in any litigation".); *see also id.* at 22 ("Permitting a fifteen percent contingency fee [in this instance] flies in the face of the well established legal principles that authorize contingency fees, as the attorneys' fees do not compensate [the firms] for any risk that they [would] receive no payment whatsoever.").

The arbitrators, on the other hand, specifically determined: recovery of any fees was uncertain; a reasonable attorney could find the fee arrangement reasonable; and the total fee was not unconscionable. ("There is nothing about a relatively high hourly rate schedule, uncertain to time of payment, and/or a relatively low contingent percentage, when the prospect of recovery is plenty

No. 14-10631

uncertain, that should be offensive to a competent lawyer, a reasonable client, or an overall traditional public policy of fairness."). This determination likewise comports with the plain language of the fee agreement, which allows for payment of the hourly-rate fees "as soon as is *financially practicable*". (Emphasis added.)

In rejecting the arbitrators' determinations regarding the uncertainty of recovery, the reasonableness of the total fee, and unconscionability, the court "substitute[d] [its] judgment for that of the arbitrators merely because [it] would have reached a different decision". *Perlman*, 424 S.W.3d at 790 (citation omitted). As a result, it erred in vacating the contingency-fee-portion of the award and related awards (for the arbitration, the firms' attorney's fees, other fees, expenses, and arbitrators' compensation; and pre-judgment interest on the contingency-fee portion).

**B.**

Generally, post-judgment interest "on any money judgment in a civil case recovered in a district court" is determined pursuant to 28 U.S.C. § 1961. As noted, the court vacated the arbitration-awarded rate of five percent for post-judgment interest; that rate exceeded the federal rate pursuant to 28 U.S.C. § 1961.

On appeal, the parties did not brief, however, the post-judgment-interest-rate issue. But, at oral argument, the firms agreed that, should the award be reinstated in full, the district court on remand would determine anew the amount of pre-judgment interest and impose post-judgment interest under the federal rate. Along that line, the Hills do not challenge the awarded rate of five percent for pre-judgment interest.

**III.**

For the foregoing reasons, those parts of the judgment upholding the hourly-rate-fee award and vacating the five-percent, post-judgment-interest rate are AFFIRMED; the vacatur of the contingency-fee award and the above-described related awards is REVERSED and judgment is RENDERED for

No. 14-10631

Campbell Harrison & Dagley, L.L.P., and Calloway, Norris, Burdette & Weber, P.L.L.C., resulting in those awards being reinstated; and this matter is REMANDED for further proceedings consistent with this opinion, including determining the amount due for pre-judgment interest, at a rate of five percent, and setting, pursuant to 28 U.S.C. § 1961, the rate for post-judgment interest.