NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2016 VT 35

No. 2015-129

| | |
|---|---|
| Burlington Administrators' Association and Nicolas Molander | Supreme Court |
| | |
| v. | On Appeal from Superior Court, Chittenden Unit, Civil Division |
| | |
| Burlington Board of School Commissioners | October Term, 2015 |

Helen M. Toor, J.

Richard T. Cassidy of Hoff Curtis, Burlington, for Plaintiff-Appellant Molander.

Joseph A. Farnham, Colin K. McNeil and Kevin J. Coyle of McNeil, Leddy & Sheahan, Burlington, for Defendant-Appellee.

PRESENT: Reiber, C.J., Dooley, Skoglund, Robinson and Eaton, JJ.

¶ 1. **ROBINSON, J.** The Burlington Administrators' Association and Nicolas Molander (collectively the Association) appeal the trial court's confirmation of an arbitration decision that Molander, in his capacity as an interim assistant principal, was not entitled to the contractual and statutory protections applicable to regular assistant principals who are not hired on an interim or acting basis. In particular, they challenge the trial court's conclusion that it had no authority to review the merits of the arbitrator's ruling for "manifest disregard of the law," and argue that in this case, the arbitrator's ruling evinced such a disregard. Because we conclude that the arbitrator's award did not in any event reflect a manifest disregard of the law, we do not

address the question whether the trial court had authority to review an arbitration award under such a standard. Accordingly, we affirm.

¶ 2.     The facts of this case are not in dispute. At the beginning of the 2010-2011 school year, Brian Williams, Assistant Principal at Burlington High School (BHS), agreed to serve as Interim Principal for a different school in the district. Williams was granted a leave of absence from the BHS Assistant Principal position for that year, and BHS teacher Nicolas Molander agreed to serve as Interim Assistant Principal at BHS in order to fill the temporary vacancy in that position. Molander entered into a one-year agreement to serve as Interim Assistant Principal at BHS for the 2010-2011 school year.

¶ 3.     In each of the next two school years, 2011-2012 and 2012-2013, Williams was granted a leave of absence from his position as BHS Assistant Principal in order to serve as Interim Principal at other schools, and Molander entered into one-year contracts as Interim Assistant Principal at BHS. In April 2013, Williams was appointed as the permanent Principal for the Sustainability Academy for the upcoming 2013-2014 school year, and accordingly, vacated his permanent Assistant Principal position at BHS.

¶ 4.     Shortly after Williams' appointment, the school district began the hiring process for filling the newly vacant Assistant Principal position at BHS, as well as a second Assistant Principal position that was vacant due to a retirement. The search committee interviewed five candidates, including Molander, and recommended that Molander be appointed to one of the Assistant Principal positions. However, in May 2013 the Superintendent halted the selection process due to community concerns about the lack of diversity in the hiring pool. The Superintendent reopened the search to seek a more diverse pool of candidates, inviting the original candidates to reapply.

¶ 5.     Given the more protracted selection process, Molander agreed to another one-year contract as Interim Assistant Principal at BHS for the 2013-2014 year. The selection process for

2

non-interim Assistant Principals resumed in the spring of 2014. This time, a larger pool of candidates was reviewed based on a number of criteria, including cultural competence. Molander received high marks, including in the area of cultural competence, and the Superintendent recommended him for one of the two Assistant Principal positions. However, in the face of a contrary recommendation from the school district's Director of Diversity, Equity, and Employee Relations, the committee that had the ultimate authority to make the hire deadlocked, and did not hire Molander for the regular Assistant Principal position.

¶ 6.     In June 2014, Molander filed a formal grievance with the Principal of BHS and the Superintendent of Schools contending he was improperly denied the opportunity to continue serving as Assistant Principal at BHS. Specifically, Molander argued that he was entitled to the due process protections in the Collective Bargaining Agreement (CBA) applicable to administrators. Later that month, the board denied the grievance, concluding that the protections Molander sought to invoke did not apply to him in his capacity as an interim administrator. Pursuant to the CBA, the Burlington Administrators Association, on behalf of Molander, submitted the dispute to arbitration.

¶ 7.     Several provisions of the applicable CBA informed the dispute before the arbitrator. Section 1.1 of the CBA defines "administrator" with reference to 16 V.S.A. § 1981(l), and specifically includes interim administrative positions unless otherwise agreed upon. The statute referenced in this definition defines "administrator" as any person so licensed who spends most of his or her employed time in any of a number of roles, including assistant principal. 16 V.S.A. § 1981(l). Section 1.2 provides that unless otherwise indicated, the term "administrators" when used in the CBA refers to all administrative employees.

¶ 8.     The section of the CBA that governs the terms of administrator employment contains two sections that are relevant. Section 4.2 provides that an administrator is on probationary status during the first two years of administrative employment, during which time

3

the decision to re-employ the administrator is at the option of the superintendent, and is not subject to appeal. Section 4.5 states, "[a]n administrator may be employed as an acting administrator when the need arises. An administrator may not be employed in such status for longer than fifteen (15) months without the approval of the Association." The section also provides that acting administrators are not eligible for the same benefits upon termination as regular administrators, and do not accrue seniority on the same terms.

¶ 9. Finally, the Association relied on two statutes in framing their arguments to the arbitrator. One, 16 V.S.A. § 243(c), states that "[a] principal who has been continuously employed for more than two years in the same position has the right either to have his or her contract renewed, or to receive written notice of nonrenewal at least 90 days before the existing contract expires." The statute provides certain procedural protections to principals employed continuously for more than two years. The second, incorporated into the CBA by reference with respect to suspensions and dismissals of administrators, as opposed to non-renewals, requires sufficient cause and provides certain procedural protections.

¶ 10. Considering these various provisions, the Association argued that after serving two years as Interim Assistant Principal, by operation of statute and the CBA, Molander became a full-fledged Assistant Principal, subject to the contractual and statutory job protections applicable to Assistant Principals. The arbitrator disagreed, and ruled in the Board's favor. In reaching this decision, the arbitrator acknowledged that administrators have certain procedural and due process protections before they can be removed from their positions. However, the arbitrator concluded that as an employee who was hired into an interim position that had been renewed for four years, Molander was not entitled to those same protections. The arbitrator reasoned that the parties' inclusion of "interim administrators" in the contractual definition of administrators reflected an agreement that interim administrators should receive pay and benefits

4

as if they were regular administrators.  However, that does not mean that an interim appointment gives rise to the same due process rights or tenure as a regular appointment.

¶ 11.  In support of this conclusion, the arbitrator noted that the word "interim" appears only in the "recognition clause" of the CBA.  The arbitrator construed the term as being synonymous with "acting administrator"—a position that, pursuant to the express terms of the CBA, is limited in tenure.  In addition, he noted that the employment of "acting administrators" is governed by a distinct provision in the CBA that affords acting administrators different benefits with respect to termination and seniority than their regularly employed counterparts—a fact that reinforced his conclusion that the parties "recognized that acting appointments do not have the same status as those administrators who have been appointed to a regular position." Although the CBA ordinarily limits acting administrators to fifteen months of service, the remedy for a violation of this limitation would be "for the school committee to cease and desist from making interim appointments," not a conversion of an acting administrator into a regular, non-interim administrator.  Based on this reasoning, the arbitrator found that Molander, "as an interim appointment, was not contractually entitled to the standard of just cause or notice requirements when his employment as an Assistant Principal was not continued."

¶ 12.  After the arbitrator issued his decision and award, the Association moved to vacate the award in superior court pursuant to the Vermont Arbitration Act.  12 V.S.A. § 5677(a).  The Association made three arguments to the superior court:  first, that the arbitrator manifestly disregarded the law; second, that the arbitrator exceeded his powers by issuing a decision that was contrary to statute; and third, that the award violated public policy.  All three arguments rest on the premise that the arbitrator failed to consider and rule on the Association's statutory arguments.

¶ 13.  The superior court concluded that it could not review the arbitrator's decision for legal errors or for "manifest disregard of the law," and cited <u>Vt. Built, Inc. v. Krolick</u>, 2008 VT

5

131, ¶ 13 n.2, 185 Vt. 139, 969 A.2d 80 (stating that a court may not "review an arbitrator's decision for manifest disregard of the law" (citing Hall Street Assocs., L.L.C. v. Mattel, Inc., 552 U.S. 576, 585 (2008))). The superior court rejected Molander's argument that the arbitrator exceeded his powers by ignoring 16 V.S.A. § 243, reasoning that such a challenge was barred by Krolick, which stated that a court may not "review the legal or factual conclusions of the arbitrator." 2008 VT 131, ¶ 17. Finally, the superior court rejected Molander's public policy argument, reasoning that this argument was "merely another iteration of [the Association's] argument that the arbitrator made a legal error or manifestly disregarded the law," which the superior court had already rejected. Accordingly, the superior court confirmed the arbitrator's award pursuant to 12 V.S.A. §§ 5676 and 5677(e). The Association appealed.

¶ 14. Under the Vermont Arbitration Act, the standard of review of an arbitration award by the superior court or this Court is limited. See 12 V.S.A. § 5677(a) (providing five grounds under which a court may vacate an arbitration award). At the heart of the Association's appeal is its argument that a court's authority to vacate an arbitration award on the ground that the arbitrators exceeded their powers, § 5677(c), encompasses the authority and duty to vacate an award because the arbitrator manifestly disregarded the law.* To the extent that the superior court concluded on the basis of a footnote in this Court's decision in Krolick, 2008 VT 131, ¶ 13, n.2, that it was not empowered to review the arbitrator's award for manifest disregard of the law, the Association contends that it erred.

¶ 15. The Association acknowledges this Court's prior statement on the subject in footnote two of the Krolick decision:

> In Muzzy, we discussed but did not adopt another ground for
> vacating an arbitrator's decision—that the arbitrator manifestly

---

* We understand the Association's argument that the court may vacate the arbitrator's award on the ground that it violates public policy as essentially a restatement of its argument that the court may set aside the award because it reflects a manifest disregard of the law, and consider the public policy argument in conjunction with its "manifest disregard" argument.

6

> disregarded the law. This ground was recognized in some federal circuits, and was perceived to be court-created and not based on the Federal Arbitration Act. Hall Street Assocs. v. Mattel, Inc., 552 U.S. 576, [585], 128 S.Ct. 1396, 1403, 170 L.Ed.2d 254 (2008). However, the United States Supreme Court has since held that under the Federal Arbitration Act a court has no authority to review for an arbitrator's legal errors. Id. at [586], 128 S.Ct. at 1404. While contractor did not raise this ground, we take this opportunity to clarify that we do not recognize a court's right to review an arbitrator's decision for manifest disregard of the law.

Id. However, the Association urges us to revisit our conclusion on this point because the stated basis for our determination—that the United States Supreme Court had held that under the Federal Arbitration Act a court has no authority to review for an arbitrator's legal errors—has proven unfounded. In a decision subsequent to this Court's opinion in Krolick, the United States Supreme Court itself left open the question that this Court thought it had decided in Hall Street Associates, writing:

> We do not decide whether "manifest disregard" survives our decision in Hall Street Associates, as an independent ground for review or as a judicial gloss on the enumerated grounds for vacatur set forth at 9 U.S.C. § 10. [Respondent] characterizes that standard as requiring a showing that the arbitrators "knew of the relevant [legal] principle, appreciated that this principle controlled the outcome of the disputed issue, and nonetheless willfully flouted the governing law by refusing to apply it." Assuming, arguendo, that such a standard applies, we find it satisfied for the reasons that follow.

Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 672 n.3 (2010) (citation omitted).

¶ 16. For similar reasons, we need not decide in this case whether to reaffirm our pronouncement in Krolick. Even if the court were empowered to review the arbitration award for manifest disregard of the law—a question we do not address—the Association would still not be entitled to set aside the award.

¶ 17. Those courts that have recognized manifest disregard as a cognizable basis for vacating an arbitration award have described it in very narrow and limited terms. First, they have held that even if manifest disregard is a potential basis for setting aside an arbitration

7

award, courts view an arbitrator's decision with considerable deference. See T.Co. Metals, LLC v. Dempsey Pipe & Supply, Inc., 592 F.3d 329, 339 (2d Cir. 2010) ("A litigant seeking to vacate an arbitration award based on alleged manifest disregard of the law bears a heavy burden." (quotation and citation omitted)); GMS Grp., LLC v. Benderson, 326 F.3d 75, 81 (2d Cir. 2003) ("We have repeatedly stressed that our review under the doctrine of manifest disregard is severely limited." (quotation omitted)); Wachovia Secs., LLC v. Brand, 671 F.3d 472, 483 (4th Cir. 2012) ("Whether manifest disregard is a 'judicial gloss' or an independent ground for vacatur, it is not an invitation to review the merits of the underlying arbitration."); Campbell Harrison & Dagley, L.L.P. v. Hill, 782 F.3d 240, 244-45 (5th Cir. 2015) (noting that to vacate award based on manifest disregard requires "an extraordinary case in which the award clearly violates carefully articulated, fundamental policy" (citation omitted)).

¶ 18. Second, they have explained that to prove manifest disregard, a party must show that "a governing legal principle is well defined, explicit, and clearly applicable to the case, and the arbitrator ignored it after it was brought to the arbitrator's attention in a way that assures that the arbitrator knew its controlling nature." GMS Grp., LLC, 326 F.3d at 81 (citation omitted); see also SBC Advanced Sols., Inc. v. Commc'ns Workers of Am., Dist 6, 794 F.3d 1020, 1027 (8th Cir. 2015) ("[A]n arbitration decision only manifests disregard for the law where the arbitrators clearly identify the applicable, governing law and then proceed to ignore it." (citation omitted)). Particularly relevant to this case, an arbitrator does not manifest disregard for the law where there is an "arguable difference regarding the meaning or applicability of laws urged upon an arbitrator." T.Co Metals, LLC, 592 F.3d at 339 (quotation and citation omitted).

¶ 19. Applying this deferential review and narrow definition of "manifest disregard" to the record before us, even if we concluded that a court may vacate an arbitration award that manifestly disregards the law, we would not conclude that the arbitrator in this case manifestly disregarded the law. The Association has argued throughout this litigation that because

8

Molander served as an Interim Assistant Principal for BHS for more than two years, he is entitled to the job protections for administrators reflected in the CBA, as well as the statutory protections for principals. 16 V.S.A. § 243. The arbitrator's conclusion does not reflect a manifest disregard for the law on either point.

¶ 20. With respect to the CBA, the Association takes issue with how the arbitrator interpreted the agreement. The CBA contains no clear statement to the effect that acting or interim administrators are entitled to the full tenure protections of non-interim administrators. Moreover, the arbitrator identified provisions within the CBA that support its view that the agreement provides protections with respect to job tenure for acting, or interim, administrators that are distinct from those available to regular administrators. The parties agreed to submit their differing interpretations of the contract to arbitration. They are bound by the arbitrator's decision. See United Bhd. of Carpenters & Joiners of Am. v. Tappan Zee Constructors, LLC, 804 F.3d 270, 275 (2d Cir. 2015) (deferring to arbitrator's interpretation of parties' contract where parties intended to submit issue of contract interpretation to arbitrator).

¶ 21. Likewise, the Association has not shown that the arbitrator's award manifestly disregards controlling law. At the arbitration hearing, it was incumbent upon the Association to alert the arbitrator to the applicability of relevant law "in a way that assures that the arbitrator knew its controlling nature." GMS Grp., LLC, 326 F.3d at 78 (citation omitted); see also Wallace v. Buttar, 378 F.3d 182, 195 (2d Cir. 2004) ("If a party fails to identify governing law to an arbitrator, we will infer knowledge and intentionality on the part of the arbitrator only if we find an error that is so obvious that it would be instantly perceived as such by the average person qualified to serve as an arbitrator." (quotation omitted)). Although the Association cited to the arbitrator the state statute providing certain job protections to principals, 16 V.S.A. § 243, it did not cite (and still has not cited) any controlling law establishing that this statute extends such job protections to people hired as acting or interim principals—a proposition that is by no means

9

obvious from the plain language of the statute and its underlying purposes. Accordingly, it cannot be said that the arbitrator appreciated the "applicability of a controlling legal rule but intentionally decided not to apply it." Cytyc Corp. v. DEKA Prods. Ltd. P'ship, 439 F.3d 27, 35 (1st Cir. 2006). Likewise, in seeking to vacate the arbitrator's award, the Association did not make a "showing in the record, other than the result obtained, that the arbitrator[] knew the law and expressly disregarded it." Id. (quoting Advest, Inc. v. McCarthy, 914 F.2d 6, 10 (1st Cir. 1990)).

¶ 22. For these reasons, even if we revisited the availability of "manifest disregard for the law" as a potential basis for vacating an arbitration award, we would affirm the superior court's confirmation of the arbitrator's award in this case.

Affirmed.

FOR THE COURT:

_____

Associate Justice

10