Filed 02/20/24


VERMONT SUPERIOR COURT

Lamoille Unit
154 Main Street
Hyde Park VT 05655
802-888-3887
www.vermontjudiciary.org

CIVIL DIVISION

Case No. 23-CV-04586

---

**Lea Ann Macrery v. John Foley, III et al**

---

## ENTRY REGARDING MOTION

Title:       Motion to Compel Arbitration or Motion for More Definite Statement (Motion: 2)
Filer:       Andrew C. Boxer
Filed Date:  December 19, 2023

The motion is GRANTED.

The present matter is a breach of contract dispute brought by a former commercial tenant seeking damages for what she alleged were actions that interfered with her use and occupancy of the leased property. The allegations include: (1) a failure to disclose that a "danger person" resided and worked at the rented property; (2) failure to maintain the electrical system and lighting; and (3) retaliation, unethical conduct and abusive business practices. Plaintiff Macrery seeks approximately $2,307,503.55 in damages.

Defendants Foley and Main & School, LLC have filed the present motion seeking to compel an arbitration provision in the parties' lease agreement, or in the alternative, seeking a more definite statement as required under V.R.C.P. 12(e) from Plaintiff Macrery.

*Motion to Compel Arbitration*

Defendants seek to compel arbitration based on a provision in the parties' lease that states "any controversy or claim relating to this contract . . . will be settled by binding arbitration under the rules of the American Arbitration Association . . . ." (Def. Ex. A.)

As a preliminary matter it is undisputed that the arbitration provision in the lease does not comply with the Vermont Arbitration Act, which requires any agreement with an arbitration provision to also have an Acknowledgement of Arbitration. 12 V.S.A. § 5652. It is uncontested that the parties' lease in this case contains no such Acknowledgement and is unenforceable as a binding

arbitration provision under the Vermont Arbitration Act. Therefore, the arbitration provision is not enforceable against Plaintiff under Vermont law.

While Defendants acknowledge the Lease's non-compliance with the requirements of the Vermont Arbitration Act, they, nevertheless, seek to enforce the clause under the Federal Arbitration Act, which does not have an Acknowledgement of Arbitration provision. 9 U.S.C.§ 2. The question then, as Defendants have framed it, becomes whether the Federal Arbitration Act applies to the parties' lease agreement and its arbitration clause.[1] This requires the Court to consider whether this lease is part of interstate commerce as that concept has been defined by numerous federal court decisions interpreting both the Commerce Clause of the United States Constitution and the applicability of this clause to activity that may on its surface appear to be intrastate commerce. By extension, the Court must also analyze the meaning and intent of the Federal Arbitration Act and determine whether its application here would be consistent with the Congressional intent and authority behind the Act.

To begin, "a court must hold a party to its arbitration contract just as the court would to any other kind [of contract]." *Morgan v. Sundance*, 596 U.S. 411, 418 (2022). In this case, the arbitration clause is a valid part of the parties' lease, and by its plain language, it compels the parties to submit any dispute to private arbitration in lieu of court action. *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 202 (5th Cir. 2016) (noting that a Court's review of an arbitration clause is limited to whether there is a delegation clause and if so, then "the motion to compel arbitration should be granted in almost all cases."). The sole question is whether the Federal or the Vermont Arbitration Act applies to this clause. This is a question of law for the court to determine. *Masseau*, 2021 VT 9, at ¶ 10.

Congress enacted the Federal Arbitration Act to apply expansively and to exercise "Congress' commerce power to the full." Id. at ¶ 12 (quoting *Allied-Bruce Terminix Cos. v. Dobson*,

---

[1] While Vermont law generally applies to the lease because it is lease agreement drawn up in the State of Vermont by Vermont parties to govern the rental of commercial property located within Vermont, federal law may still preempt the application of State law in certain areas of this agreement. *Masseau v. Luck*, 2021 VT 9, ¶ 19. Thus, while the Court began its analysis by clarifying that the lease's arbitration provisions did not qualify as binding under the Vermont Arbitration Act, the remainder of this decision will examine whether the Federal Arbitration Act applies. To the extent that the Federal Arbitration Act applies, it effectively preempts the Vermont Arbitration Act , specifically the more demanding provisions of Vermont law that require specific notice and acknowledgment. Id. Put plainly, the higher requirements of the Vermont Arbitration Act do not control if the Federal Arbitration Act applies to this agreement. In that case, the lower standards of the Federal Act apply and govern whether the parties' arbitration clause is triggered an is binding on the parties.

513 U.S. 265, 277 (1995)) (internal quotations omitted). The Act "embodies a liberal federal policy favoring arbitration agreements." *Kourembanas v. InterCoast Colleges*, 373 F.Supp.3d 202, 311 (D.Me. 2019) (quoting *Foss v. Circuit City Stores, Inc.*, 477 S.Supp.2d 230, 232–33 (D.Me. 2007)) (internal quotations omitted).

Congress' broad powers under the Commerce Clause includes the ability to regulate "(1) "the use of the channels of interstate commerce," (2) "the instrumentalities of interstate commerce, or persons or things in interstate commerce, even though the threat may come only from intrastate activities," and (3) "activities that substantially affect interstate commerce." *Masseau*, 2021 VT 9, at ¶ 13 (quoting *United States v. Lopez*, 514 U.S. 549, 558–59 (1995)). The last category has been interpreted to include intrastate activities that substantially affect interstate commerce. *Masseau*, 2021 VT 9, at ¶ 13 (citing *Lopez*, 514 U.S. at 559–60).

In applying this last general principle to specific contracts, the United States Supreme Court has rejected interpretations that would stay application of federal law on the basis that the parties "contemplated a primarily local transaction" or that the transaction was not itself "substantially interstate." *Masseau*, 2021 VT , at ¶¶ 14, 15 (citing *Allied-Bruce*, 513 U.S. at 269). Instead, courts are instructed to look at "whether the transaction in fact involved interstate commerce, even if the parties did not contemplate an interstate connection." *Masseau*, 2021 VT 9, at ¶¶ 14, 15 (citing Allied-Bruce, 513 U.S. at 281); see also *Citizens Bank v. Alafabco*, 539 U.S. 52, 56–57 (2003).

In the present case, there is nothing about the specific transaction or parties that appears to involve an interstate transaction or the channels of interstate commerce. Plaintiff is a Vermont resident who owned and operated a Vermont-based food business. Defendants own Vermont real estate, while it is not clear whether Defendants' real estate holdings extend beyond Vermont, the Court will, for purposes of this analysis, presume that the Jeffersonville property is Defendants' only real estate holding. The Court understands based on these facts that the parties' lease and relationship was an intrastate transaction and did not by its terms directly involve interstate commercial activity.

As indicated above, the question of whether a specific transaction is interstate or intrastate does not end the Court's analysis. *Masseau*, 2021 VT 9, at ¶ 14. Instead, the Court must look to whether this transaction when considered with other transactions "in the aggregate" fall outside of the federal Commerce Clause. Id. at ¶ 16. The answer to that question has already been determined

by the United States Supreme Court in *Russell v. U.S.*, 471 U.S. 858, 862 (1985), where the Court ruled that the "rental of real estate is unquestionably" an activity affecting interstate commerce. Id. The Supreme Court noted that it "need not rely on the connection between the market for residential units and the 'interstate movement of people,' to recognize that the local rental of an apartment is merely an element of a much broader commercial market in rental properties." Id. While the Supreme Court more recently issued a decision that qualified the holding of *Russell* and limited its application where the building at issue was owner-occupied and used as a personal residence, the decision also affirms the broad scope of the commerce clause to cover activities involving the rental of real estate and the use of such rental real estate for commercial or business activities. *Jones v. U.S.*, 529 U.S. 848, 858 (2000).

There are two points in the lines of cases cited above that merit brief, further discussion. First, the holding of *Masseau* expressly relies on both the impact that home inspections as part of the transfer of real estate have on interstate commerce in the aggregate, and the fact that the defendants were the local affiliates of a national chain, which invoked a direct contact with interstate commerce. *Masseau*, 2021 VT 9, at ¶ 16 (reserving the issue of whether either factor would support the application of a Federal Arbitration Act to another case). While *Masseau* did not go so far as to rule that an exclusively in-state commercial transaction in an area of commerce deemed, in the aggregate, to be a part of interstate commerce, would trigger application of the Federal Arbitration Act, this Court has found no compelling reasoning to rule to the contrary of this proposition or to extend the reasoning of *Masseau* to this more limited fact pattern. As *Masseau* notes, the current federal interpretation of the reach of the commerce clause extends to a transaction, "even where a particular transaction is **wholly intrastate with no specific effect on interstate commerce**" . . . "if in the aggregate the economic activity in question **would represent a general practice subject to federal control**." Id. at ¶ 15 (quoting *Alafabco*, 539 U.S. at 56–57) (internal quotions omitted) (emphasis added). The holding and reasoning of *Alafabco* does not require one of the parties to be tethered to an out-of-state organization or have a direct connection to an interstate stream of commerce—such as the defendants in *Masseau*. *Alafabco*, 539 U.S. at 56–57 (expressly rejecting such a requirement). In such cases, however, the connection between the commercial activity in the aggregate and interstate commerce must be well-established. Id. As such, the Court, does not find that the lack of a direct connection or link to either interstate commerce or an out-of-state entity to be an impediment to the application of the Federal Arbitration Act, and it concludes that this reasoning is

a reasonable extension of the analysis and holding of *Masseau*, 2021 VT 9, at ¶ 16. The Court adopts this reasoning within its discretion, particularly because the nature of the activity, rental of commercial real estate is unequivocally a part of interstate commerce as recognized by the United State Supreme Cout. *Russell*, 471 U.S. at 862.

This reasoning leads to the second issue, which is a limited factual distinction that lies between the present case and the *Russell* and *Jones* cases. In both *Russell* and *Jones*, the issue under discussion was whether a federal criminal statute concerning arson applied against defendants who never crossed state lines to commit the alleged crimes. *Jones*, 529 U.S. at 858; *Russell*, 471 U.S. at 858–59. In both cases, the Court looked to whether the Commerce Clause permitted the federal government to charge the defendants with such a crime. While the subject matter statute in each of these cases may be different from the present matter, the salient analysis is the same. Specifically, the issue in both *Russell* and *Jones* and the present case is whether Congress has constitutional authority to enact laws that regulate and concern actions that affect the area of commercial rentals— even if such rentals and actions are not in and of themselves, interstate transactions and do not involve interstate actors.

In this respect, the reasoning behind the applicability of 18 U.S.C. § 844 and 9 U.S.C. § 2 is the same because both rely on an analysis of Congress' power to regulate and impose conditions on particular activities. While *Russell* and *Jones* both deal with the federal government's authority to bring criminal arson charges, the relevant portions of those decisions concern whether or not intrastate rental property triggers the interstate commerce clause and falls under Congress' authority to regulate and govern. This is precisely the same analysis required in the present case. Given the lack of direct interstate connections the only basis for applying the Federal Arbitration Act is if the business of commercial rentals, in the aggregate, involved interstate commerce. The line of cases from *Russell* answers this question in the affirmative, and while *Russell* may be further distinguished as dealing with a residential action, the distinction is one without substantive difference as Courts, including the Second Circuit, have uniformly held that commercial real estate rental has sufficient interstate commerce connection as to bring it under the purview and authority of the Congress. See generally *Jurisdictional Basis for Prosecution under 18 U.S.C.A. § 844(i), Making It Federal Offense to Destroy, by Means of Fire or Explosive, Property Used in Interstate or Foreign Commerce or in any Activity Affecting Interstate or Foreign Commerce*, 71 A.LR. Fed. 2d 71, at §18 (2013); see also *U.S. v. Raposo*, 205 F.3d 1326, at *2 (2d Cir. 2000) (not reported) ("[T]here is a per se rule that rental property constitutes

property that is used in an activity affecting interstate commerce.") (quoting *United States v. Tocco*, 135 F.3d 116, 124 (2d Cir.), cert. denied, 523 U.S. 1096 (1998)). Based on this, the Court finds there is no meaningful distinction in the reasoning of *Russell* concerning the extent of Congressional authority under the Commerce Clause that would limit or modify its applicability to the present case and facts. Thus, the Court finds the reasoning of the *Russell* line of cases to compel a finding that the rental of commercial property affects interstate commerce in the aggregate, and Congress, under its Commerce Claus powers, is authorized to extend the Federal Arbitration Act to leases concerning the rental of commercial property.

Based on this reasoning, the Court finds that the Federal Arbitration Act applies to the present lease and dispute. Under the terms of this provision, the parties are compelled to take their dispute to private arbitration, consistent with the terms of the parties' agreement. In accord with this conclusion, the Court shall enter an Order to Compel the parties to proceed to arbitration and shall stay the present action subject to this Order. *Hermitage Inn Real Estate Holding Co., LLC v. Extreme Contracting, LLC*, 2017 VT 44, ¶¶ 17, 18.

## ORDER

Based on the analysis above, the Court **Grants** Defendants Foley and Main & School, LLC's motion to compel arbitration. The parties are ordered to enter private arbitration on the dispute in the matter in a manner consistent with the parties' arbitration clause, which is governed by the American Arbitration Association's rules. The Court will note that such rules require Plaintiff Macrery to file for arbitration and to pay any initial fees necessary. *Hermitage Inn Real Estate Holding Co, LLC*, 2017 VT 44, at ¶ 24 ("Under these rules, arbitration is initiated when the initiating party ('the claimant') files a demand for arbitration with the AAA, along with the administrative filing fee and a copy of the applicable arbitration agreement from the parties' contract."). During the pendency of the arbitration, the Court shall stay this matter in accord with 9 U.S.C. § 3. Based on this grant of Defendant's primary motion, its alternative motion is **Denied**.

Electronically signed on 2/15/2024 9:32 PM pursuant to V.R.E.F. 9(d)

_____
Daniel Richardson
Superior Court Judge