NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2023 VT 6

No. 21-AP-257

| | |
|---|---|
| Howard Center | Supreme Court |
| | |
| | On Appeal from |
| v. | Superior Court, Chittenden Unit, Civil Division |
| | |
| AFSCME Local 1674 & Daniel Peyser | March Term, 2022 |

Samuel Hoar, Jr., J.

Joseph A. Farnham and Kevin J. Coyle of McNeil, Leddy & Sheahan, Burlington, for
 Plaintiff-Appellant.

John L. Franco, Jr., Burlington, for Defendants-Appellees.

PRESENT: Reiber, C.J., Eaton, Carroll[1] and Cohen, JJ., and Waples, Supr. J., Johnson, J.
(Ret.)[2], Specially Assigned

¶ 1. **REIBER, C.J.** Employer Howard Center appeals from a trial court order that confirmed an arbitration award in favor of grievant Daniel Peyser and AFSCME Local 1674. Employer asks this Court to adopt "manifest disregard" of the law as a basis for setting aside an arbitration award and to conclude that the arbitrator violated that standard here. We do not decide

_____

[1] Justice Carroll was present during oral argument but did not participate in this decision.

[2] Justice Johnson was not present for oral argument, but reviewed the briefs, listened to oral argument, and participated in the decision.

whether to adopt the manifest-disregard standard because, assuming arguendo it applies, employer fails to show that its requirements are satisfied. We therefore affirm.

¶ 2. The record indicates the following. Employer is a nonprofit organization that provides mental-health services to individuals in northern Vermont. Grievant is a licensed social worker who has worked for employer since 2016. Grievant provides therapy and support to patients receiving medication-assisted treatment for substance-use disorder. He is required to protect patient confidentiality in compliance with federal and state laws and Howard Center policy. As part of his job, grievant is also responsible for submitting appropriate paperwork to allow the Howard Center to bill clients' insurance carriers for services provided.

¶ 3. In May 2019, employer expressed concern over grievant's billing practices, specifically, his submission of billing paperwork in May for services provided in April. Employer told grievant that it was considering disciplining him for "dishonesty and unethical action" concerning the backdated bills. Employer held a meeting about this issue in June 2019 with grievant and his union representative. Grievant brought two billing notes from patient records to show that other employees engaged in the same billing practices. He shared the notes, which contained patients' names, with his union representative.

¶ 4. Employer did not reprimand grievant for the billing practices. In August 2019, however, employer informed grievant that he breached employer's confidentiality policy by sharing the billing notes with his union representative at the June meeting. Employer issued a written reprimand to grievant. The reprimand stated that sharing client records without redacting confidential information violated its protocols and state and federal regulations, and that grievant knew or should have known of these standards. Employer also explained that it was required to report the breach to state and federal authorities and to those individuals whose records were disclosed.

2

¶ 5.    Grievant filed a grievance under the terms of his collective-bargaining agreement, arguing in part that employer lacked just cause to discipline him.  The parties agreed to proceed immediately to arbitration.  In an October 2020 decision, the arbitrator sustained the grievance.  While the arbitrator agreed that sharing confidential information with the union representative was unacceptable, he found that grievant did not engage in intentional misconduct that justified the placement of a written reprimand in his personnel record.  At worst, the arbitrator reasoned, grievant made an error in judgment.  Given the unique situation at issue—sharing confidential information with a union representative during an internal closed-door grievance meeting—as well as other mitigating circumstances, the arbitrator determined that employer lacked just cause to issue the reprimand and he ordered the reprimand removed from grievant's personnel file.

¶ 6.    Employer then filed an action in the civil division seeking to modify or vacate the arbitrator's award.  It argued in relevant part that the arbitrator manifestly disregarded the law in sustaining the grievance.  Employer complained that the arbitrator did not cite or apply the "just[-] cause" standard as articulated in In re Brooks, 135 Vt. 563, 568, 382 A.2d 204, 207-08 (1977), but instead offered his "own spin" on just cause and incorrectly held that an employer must provide an employee with "express advance notice that certain misconduct may be grounds for discipline." Employer argued that the factual circumstances here satisfied the just-cause standard and it faulted the arbitrator for failing to cite or examine the federal and state laws and regulations that it cited.

¶ 7.    The court rejected these arguments.  It found that, even if the arbitrator had based his decision on the absence of "express advance notice," as employer posited, it would be at most a mistake of law, which was not grounds for vacating an arbitration award.  See 21 R. Lord, Williston on Contracts § 57:139 (4th ed. 2022) ("Courts . . . will not vacate or modify an award even if there is a mistake or misapplication of law by the arbitrators."); see also Springfield Tchrs. Ass'n v. Springfield Sch. Dirs., 167 Vt. 180, 184, 705 A.2d 541, 544 (1997) (explaining that courts "will not review the arbitrator's decision for errors of fact or law").  In any event, the court found

3

that employer misread the arbitrator's decision. It found that the arbitrator ultimately held that the discipline imposed was unreasonable given certain mitigating circumstances—not that grievant lacked sufficient notice—and this conclusion was fully consistent with the applicable just-cause standard. See Brooks, 135 Vt. at 568, 382 A.2d at 207-08 (explaining that touchstone of just-cause analysis is reasonableness).

¶ 8.    The court emphasized that the question before it was not whether the arbitrator could have found just cause for the discipline imposed, but instead whether the arbitrator manifestly disregarded the law in concluding that employer lacked just cause under the circumstances. It found that none of the cases cited by employer supported the argument that an arbitrator, faced with similar circumstances, must always find just cause for discipline. The court thus concluded that the arbitrator's decision did not meet the high bar required to show manifest disregard of the law, assuming arguendo that this standard applied. Employer appealed, reiterating its argument that the arbitrator's award should be vacated because he manifestly disregarded the law.

## I. Legal Standards

¶ 9.    At the outset, we emphasize our very narrow review. "Vermont has a long history of upholding arbitration awards whenever possible." Shahi v. Ascend Fin. Servs., Inc., 2006 VT 29, ¶ 10, 179 Vt. 434, 898 A.2d 116. Review is limited to "whether there exist statutory grounds for vacating or modifying the arbitration award" and "whether the parties were afforded due process." Id. This limited review is grounded in the principle that arbitration should provide efficient resolution of disputes and not become another step in the litigation process. Springfield Tchrs. Ass'n, 167 Vt. at 183-84, 705 A.2d at 543-44. Courts act "as an appellate tribunal, not a second arbitrator." Shahi, 2006 VT 29, ¶ 10.

¶ 10.    The Vermont Arbitration Act (VAA) identifies five circumstances under which a court must vacate an award. See 12 V.S.A. § 5677(a)(1)-(5). We have not yet decided whether to

4

recognize "manifest disregard of the law" as an additional basis for vacating an arbitration award, although other courts have done so. See Masseau v. Luck, 2021 VT 9, ¶ 30, 214 Vt. 196, 252 A.3d 788 (recognizing that this "remains an open question" under VAA and under Federal Arbitration Act (FAA)), cert. denied sub nom. Masseau v. Henning, 142 S. Ct. 89 (2021) (mem.); see also Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383, 388-89 (2d Cir. 2003) (discussing origins and application of manifest-disregard standard in Second Circuit).

¶ 11. Under the manifest-disregard doctrine, a court may vacate an arbitration award if it " 'finds both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case.' " Masseau, 2021 VT 9, ¶ 31 (quoting Wallace v. Buttar, 378 F.3d 182, 189 (2d Cir. 2004)). Under the first prong, courts look to the arbitrator's subjective knowledge; the second prong describes an objective inquiry. Westerbeke Corp. v. Daihatsu Motor Co., 304 F.3d 200, 209 (2d Cir. 2002). "The party seeking vacatur bears the burden of proving manifest disregard." Id.

¶ 12. "Manifest disregard" requires "something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand or apply the law." Id. at 208 (quotation omitted). A court may not vacate an award under this doctrine "merely because it is convinced that the arbitration panel made the wrong call on the law." Wallace, 378 F.3d at 190. Instead, "[t]he error must have been obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator." Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker, 808 F.2d 930, 933 (2d Cir. 1986).

¶ 13. Use of this doctrine is "severely limited" and vacatur on this basis is "exceedingly rare." Wallace, 378 F.3d at 189 (quotations omitted). An arbitrator's award remains entitled to "considerable deference," Burlington Adm'rs' Ass'n v. Burlington Bd. of Sch. Comm'rs, 2016 VT 35, ¶ 17, 201 Vt. 565, 145 A.3d 844, and should be upheld if "the arbitrator has provided even

5

a barely colorable justification" for the award, <u>Westerbeke</u>, 304 F.3d at 222.  Compare <u>N.Y. Tel. Co. v Commc'ns Workers of Am. Loc. 1100</u>, 256 F.3d 89, 93 (2nd Cir. 2001) (per curiam) (applying standard and affirming order vacating award where arbitrator explicitly ignored Second Circuit precedent and followed other circuits' precedents) with <u>Duferco</u>, 333 F.3d at 392-93 (upholding arbitration award despite contradictory reasoning in decision because plausible reading of award fit within governing legal principle).

¶ 14.  We review de novo the legal question of whether to recognize the manifest-disregard standard.  See <u>Garbitelli v. Town of Brookfield</u>, 2011 VT 122, ¶ 5, 191 Vt. 76, 38 A.3d 1133.  Assuming arguendo that the standard applies, we also review de novo whether the arbitrator manifestly disregarded the law in this case.  See <u>Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC</u>, 497 F.3d 133, 138 (2d Cir. 2007) ("When a party challenges the district court's review of an arbitral award under the manifest disregard standard, we review the district court's application of the standard de novo" (quotation and emphasis omitted)).

¶ 15.  For the reasons set forth below, we conclude, as in <u>Masseau</u>, that "even assuming that courts are empowered to vacate an arbitrator's decision based on manifest disregard of the law—which we do not decide—the asserted legal error in the arbitrator's decision here does not rise to the level of manifest disregard."  2021 VT 9, ¶ 32.

## II.  Application

¶ 16.  Employer's manifest-disregard argument focuses on the arbitrator's failure to analyze the federal Health Insurance Portability and Accountability Act (HIPAA) Privacy Rule and we tailor our analysis accordingly.[3]  Employer contends that, under this rule, it was required to discipline grievant by imposing an "appropriate sanction[]" and it therefore had just cause to reprimand him.  Employer maintains that the HIPAA Privacy Rule is "well defined, explicit, and

---

[3]  We do not suggest that the other laws and regulations that employer presented to the arbitrator were inapplicable or could not provide grounds to support a finding of just cause, and we make no judgment in this regard.

6

clearly applicable," id. ¶ 31, and that the arbitrator manifestly disregarded the law by "completely ignoring it."

¶ 17.   HIPAA "prohibits the disclosure of medical records without a patient's consent." Meadows v. United Servs., Inc., 963 F.3d 240, 244 (2d Cir. 2020) (per curiam).  The HIPAA Privacy Rule "generally provides that a covered entity may not use or disclose an individual's protected health information to third parties without a valid authorization, except as otherwise permitted or mandated under the Rule."  Arons v. Jutkowitz, 880 N.E.2d 831, 841 (N.Y. 2007). Under this rule, a covered entity like employer must "[e]nsure the confidentiality, integrity, and availability of all electronic protected health information the covered entity or business associate creates, receives, maintains, or transmits," and "[e]nsure compliance . . . by its workforce."  45 C.F.R. § 164.306(a)(1), (4) (2022).  To do so, a covered entity must implement a sanction policy and "[a]pply appropriate sanctions against workforce members who fail to comply with the security policies and procedures of the covered entity or business associate."   Id. § 164.308(a)(1)(ii)(C).  In compliance with this regulation and other policies, employer maintains a privacy policy that prohibits disclosure of confidential information without consent, and a personnel policy and collective bargaining agreement that establish a discipline policy.

¶ 18.   The arbitrator acknowledged the privacy laws cited by employer in his decision and recognized that employer was required to comply with them.  He stated:

> The employer has a number of policies with respect to patient confidentiality, and there are also a number of [s]tate and [f]ederal laws addressing the issue of patient privacy.  The various laws and regulations impose sanctions on entities that violate the privacy protections.  It is therefore easy to understand why the employer takes matters of patient confidentiality and patient privacy very seriously.  It is also appropriate and reasonable that the employer would promulgate rules on patient confidentiality, and that its employees would be obligated to follow any such policies. [Grievant] should certainly have known of such rules.

The arbitrator found that employer "acted appropriately in raising this issue of patient confidentiality with [grievant], as there was an obvious method that could have been used to protect patient confidentiality."

¶ 19.　Mindful of these laws, the arbitrator nonetheless reasoned that "[n]ot all breaches of patient confidentiality are the same and the facts and circumstances of each and every event must be considered when reviewing disciplinary action issued for such infractions." He found that because the disclosure took place during a closed disciplinary meeting, it was understandable that grievant asked his union representative to attend. According to the arbitrator, the circumstances did not show that grievant engaged in "intentional misconduct"; at worst, he "made an error in judgment." He acknowledged that the written reprimand was "a very low level of discipline" but reasoned that this discipline was not warranted "based on [grievant's] record of unblemished employment" with employer. Thus, he concluded that employer should have instead used informal counseling and directives rather than formal discipline, and that employer thus lacked just cause to reprimand grievant.

¶ 20.　Employer fails to show that the HIPAA Privacy Rule clearly and obviously required the arbitrator to reach a contrary conclusion. Neither the HIPAA statute or regulation referenced above define the term "appropriate sanction" and there is no case law interpreting the term. See Westerbeke Corp., 304 F.3d at 209 ("A legal principle clearly governs the resolution of an issue before the arbitrator if its applicability is obvious and capable of being readily and instantly perceived by the average person qualified to serve as an arbitrator." (quotation omitted)). Employer concedes that the term "appropriate" necessarily connotes discretion to some extent. The case cited by employer, Jespersen v. Horizon Healthcare Servs, Inc., No. MER-C-12-17, 2017 WL 837478 (N.J. Super. Ct. Ch. Div. Feb. 15, 2017), does not hold that a particular type of sanction must always be imposed for violations of HIPAA's Privacy Rule.

¶ 21.　As one treatise explains:

HIPAA does not specify particular sanctions that covered entities must impose, leaving the details of sanctions policies to organizations' discretion. In general, the type of sanction applied should vary on the basis of such factors as the severity of the violation, whether it was intentional, and whether the violation indicated a pattern or practice of improper use or disclosure of PHI [(protected health information)]. Sanctions might begin with a warning, for example, but increase in severity with repeated violations. Ultimately, the covered entity may require the termination of a staff member for extremely serious or repeated violations.

Guide to Medical Privacy and HIPAA § 733 (J. Flynn ed. 2016). The treatise provides examples of sanction categories, indicating that violations caused by "[l]ack of training[,] [i]nexperience[,] [a]ccident[,] or [that were] unintentional" could be sanctioned by training or counseling. Id. at fig. 733-1.[4]

¶ 22. The arbitrator essentially took this approach in his decision. He considered grievant's misconduct through the lens of the just-cause framework as he was asked to do. In determining whether just cause exists, the "analysis should center upon the nature of the employee's misconduct," In re Morrissey, 149 Vt. 1, 13, 538 A.2d 678, 686 (1987), and "the ultimate criterion of just cause is whether the employer acted reasonably" in disciplining the employee, Brooks, 135 Vt. at 568, 382 A.2d at 207.[5] There are various factors to consider in this analysis. See In re Brown, 2004 VT 109, ¶ 12, 177 Vt. 365, 865 A.2d 402 (identifying factors relevant to just-cause analysis, including "nature and seriousness of the offenses and their relation

---

[4] As set forth above, the arbitrator found that grievant did not engage in "intentional misconduct" and, at worst, he "made an error in judgment." Contrary to the assertion in the dissent, post ¶ 40, this type of conduct falls within the type of "[c]ategory 1" violations described in the treatise, i.e., "[u]nintentional breach of privacy or security caused by carelessness, lack of knowledge or lack of judgment." Guide to Medical Privacy and HIPAA § 733 (J. Flynn ed. 2016).

[5] Although Brooks involved just cause for dismissal, we have suggested that the same standard would apply to a lesser form of discipline if the contract supported that conclusion. In re Gorruso, 150 Vt. 139, 144 n.3, 549 A.2d 631, 634 n.3 (1988) (noting that contract language "appears to relate our 'just cause for dismissal' standard to any disciplinary action"). Likewise, the collective bargaining agreement here provides that "[a]n employee shall not be disciplined except for just cause."

to the grievant's duties and positions," "grievant's past disciplinary record," any mitigating circumstances, and "adequacy and effectiveness of alternative sanctions to deter such conduct in the future").

¶ 23. The arbitrator concluded that the sanction was not reasonable under the circumstances, which is supported by factors he considered, including the surrounding circumstances and grievant's unblemished record of employment. The arbitrator's analysis was consistent with just-cause principles and his conclusion was "at least slightly colorable, which is all that is required given the strong presumption that the arbitrator has not acted in manifest disregard of the law." Westerbeke, 304 F.3d at 222.

¶ 24. The case cited by employer, Western Union Telegraph Co. v. American Commc'ns. Ass'n, C.I.O., 86 N.E.2d 162 (N.Y. 1949), does not compel a different result. As employer recognizes, the question in that case was whether the arbitrator exceeded his authority in making his award and not whether he acted in manifest disregard of the law. The parties there agreed as part of a collective bargaining agreement (CBA) that there would be no strikes or work stoppages; they further agreed that an arbitrator lacked authority to alter or modify any of the CBA's express provisions. The court found that the arbitrator violated the clear and unambiguous terms of the parties' agreement in concluding that employees who had engaged in work stoppages in support of a strike were acting consistently with "a practice generally prevalent in the telegraph industry" and were entitled to be reinstated. Id. at 166. "By that conclusion," the court held, "the arbitrator— entering a field of decision from which the parties had expressly excluded him—modified an express provision of the contract." Id. The court also found that the arbitrator's construction of the parties' agreement would give judicial sanction to conduct—the willful refusal to forward a message—that violated criminal laws which were enacted expressly "to avoid disruption of the public service furnished by a telegraph company." Id. at 168 (emphasis omitted). The court

10

reasoned that the employer could not discharge its own legal duties if it was required to retain employees who refused to transmit messages. Id.

¶ 25.    Employer contends that, like the case above, the arbitration award ousts it from exercising control over its own business and prevents it from complying with the law.  We are unpersuaded.  As discussed above, the HIPAA Privacy Rule does not clearly require a certain type of sanction for violations, unlike the language at issue above.  See Duferco, 333 F.3d at 389-90 (explaining that "misapplication of an ambiguous law does not constitute manifest disregard" and party seeking vacatur must show that arbitrator was "fully aware of the existence of a clearly defined governing legal principle, but refused to apply it, in effect, ignoring it"); see also Westerbeke, 304 F.3d at 217 ("A party seeking vacatur must . . . demonstrate that the arbitrator knew of the relevant principle, appreciated that this principle controlled the outcome of the disputed issue, and nonetheless flouted the governing law by refusing to apply it.").  Employer fails to show that this case presents an "exceedingly rare instance[]" of "egregious impropriety," Masseau, 2021 VT 9, ¶ 31 (quotation omitted), that rises to the level of manifest disregard, assuming arguendo we would adopt that standard.  We therefore affirm the trial court's decision.

Affirmed.

FOR THE COURT:

_____
Chief Justice

¶ 26.    **EATON, J., dissenting.**    The majority's decision essentially transforms our limited review of arbitration decisions into no review.  The arbitrator here recognized that the law required employer to sanction grievant for disclosing confidential patient information but the arbitrator chose to disregard that law and reverse employer's decision.  The majority's refusal to adopt the manifest-disregard standard is harmful generally because it erodes confidence in arbitration awards and provides an incentive for arbitrators to avoid explaining the bases for their

11

decisions. It is also detrimental under the circumstances of this case because it punishes employer for carrying out its obligations under federal law and ignores the harm to patients whose information was improperly disclosed. Because employer's decision to sanction grievant was supported and required by law and the arbitrator disregarded the law in overturning it, I would reverse and remand for the trial court to vacate the arbitration order. Therefore, I dissent.

¶ 27. It is not necessary to recount the full procedural posture of this case, but a few undisputed facts must be emphasized. Grievant is employed as a social worker by employer, Howard Center, and is responsible for providing counsel and support to patients who receive medication-assisted treatment for substance-use disorder. In this role, grievant has access to private health information of patients and is required to protect patient confidentiality in compliance with employer's policy as well as federal and state laws. It is undisputed that grievant did not maintain this confidentiality and instead unnecessarily shared patients' private health information for his own purposes with a union representative without permission or authorization, breaching employer's confidentiality policy. In response to this clear violation of employer policy and in furtherance of employer's obligations under federal law, employer issued a written reprimand to grievant. Grievant challenged this action before an arbitrator.

¶ 28. In defense of its action, employer argued that there was just cause to reprimand grievant because grievant violated its confidentiality policy, which was enacted in accordance with federal and state laws requiring it to maintain the privacy of its clients and their records. Employer cited federal and state laws on patient privacy and confidentiality, including the federal Public Health Service Act and the federal Health Insurance Portability and Accountability Act (HIPAA) and their implementing regulations, as well as Vermont patient-privacy law.

¶ 29. To appreciate the legal outcome of this case, it is important to understand these privacy laws, particularly HIPAA, which was passed to "protect[] the privacy of health information in the midst of the rapid evolution of health information systems." S.C. Med. Ass'n v. Thompson,

12

327 F.3d 346, 348 (4th Cir. 2003). The HIPAA Privacy Rule forbids organizations from using or disclosing private health information without a valid authorization. Arons v. Jutkowitz, 880 N.E.2d 831, 840-41 (N.Y. 2007). Under this Rule, employer must "[e]nsure the confidentiality, integrity, and availability of all electronic protected health information the covered entity or business associate creates, receives, maintains, or transmits," and "[e]nsure compliance . . . by its workforce." 45 C.F.R. § 164.306(a)(1), (4) (2022). Employer is also required to implement a sanction policy and "[a]pply appropriate sanctions against workforce members who fail to comply with the security policies and procedures of the covered entity or business associate." Id. § 164.308(a)(1)(ii)(C). To ensure compliance, employer has a privacy policy that prohibits disclosure of confidential information without consent, and a discipline policy. Employer argued that it was legally mandated to respond to the breach of confidentiality by imposing an "appropriate sanction[]" and therefore had just cause to take action against grievant. See In re Brooks, 135 Vt. 563, 568, 382 A.2d 204, 207 (1977) (explaining that employer must have just cause to impose discipline).

¶ 30. The arbitrator recognized the existence and importance of these privacy laws and employer's obligation to comply with them. The arbitrator noted that employer was subject to state and federal laws that impose sanctions on entities that violate privacy protections and that it was "appropriate and reasonable that the [e]mployer would promulgate rules on patient confidentiality, and that its employees would be obligated to follow any such policies." The arbitrator also found that grievant should have known about these rules. Even though the arbitrator agreed with employer that sharing the confidential information with the union representative was unacceptable, the arbitrator concluded that the breach of employer policy did not warrant formal discipline. The arbitrator characterized grievant's unauthorized and unlawful disclosure as an "error in judgment," and overturned employer's sanction. Following employer's appeal, the civil division recognized that violations of patient confidentiality may provide just cause for discipline,

but rejected employer's argument that the arbitrator manifestly disregarded the law in concluding that there was no just cause in this case.

¶ 31. The majority affirms the civil division's decision, concluding that neither HIPAA nor its implementing regulations define what the appropriate sanction is for disclosing private health information and emphasizing that the law provides some discretion in how an employer responds. Ante, ¶ 20. The majority basically holds that HIPAA did not require employer to formally sanction claimant and therefore the arbitrator did not disregard the law when he reversed employer's sanction of claimant. As explained more fully below, this interpretation is at odds with the language of federal law and the guidance relied on by the majority.

¶ 32. I agree that arbitration decisions should not be lightly overturned and that under our limited review of those decisions even legal errors are not an express basis for overturning arbitration awards under the Federal Arbitration Act (FAA), 9 U.S.C. § 10(a)(1)-(4), or the Vermont Arbitration Act (VAA), 12 V.S.A. § 5677(a)(1)-(5). However, this is not merely a situation where the arbitrator misapplied the law. Here, the arbitrator had full knowledge of employer's obligations under federal law, acknowledged them, and chose to ignore those requirements.

¶ 33. To address exactly this type of situation, the Second Circuit and several other jurisdictions have adopted a two-pronged test for manifest disregard under which the court must " 'find[] both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit, and clearly applicable to the case.' " Masseau v. Luck, 2021 VT 9, ¶ 31, 214 Vt. 196, 252 A.3d 788 (quoting Wallace v. Buttar, 378 F.3d 182, 189 (2d Cir. 2004)), cert. denied sub nom. Masseau v. Henning, 142 S. Ct. 89 (2021) (mem.); see also Wachovia Sec., LCC v. Brand, 671 F.3d 472, 482-83 (4th Cir. 2012) (concluding that manifest disregard exists as basis to overturn arbitration decision); Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jaros, 70 F.3d 418, 421 (6th Cir. 1995)

14

(recognizing manifest disregard as basis for review of arbitration order). Manifest disregard is for "rare instances where some egregious impropriety on the part of the arbitrator is apparent," and not for a mere error in understanding or applying the law.[6] Masseau, 2021 VT 9, ¶ 31 (quotation omitted).

¶ 34. Employer urges application of this standard to the arbitrator's decision in this case, arguing that the arbitrator ignored the governing law regarding patient confidentiality and refused to acknowledge that employer was required to sanction grievant for his violation of the law. I agree that the arbitrator manifestly ignored the law in concluding that employer lacked just cause to discipline grievant for violating patient confidentiality. I would adopt the manifest-disregard standard and allow courts to vacate an arbitration award when they find that (1) the arbitrator knew the governing law but refused to follow it or ignored it, and (2) the applicable law was "well defined, explicit, and clearly applicable to the case." Id. (quoting Wallace, 378 F.3d at 189). Although mere legal error will not suffice to vacate an award, id. ¶ 29, this Court should not turn a blind eye to intentional disregard of the law. While the majority pays lip service to the possibility of adopting the manifest-disregard standard at some future time, I can think of no clearer opportunity to do so than is presented here, where the arbitrator purposely ignored applicable law to excuse an unnecessary and unlawful breach of patient confidentiality by grievant. The majority's failure to adopt the manifest-disregard doctrine in this case is essentially a rejection of it.

¶ 35. There would be negative general consequences if manifest disregard were not available as a ground for vacating an award. First, the application of the manifest-disregard

_____

[6] This Court and the U.S. Supreme Court have left open the question as to whether manifest disregard of the law may provide a basis for review. See Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 559 U.S. 662, 672 n.3 (2010) (recognizing manifest-disregard doctrine for purposes of dispute but declining to decide whether doctrine is "an independent ground for review or . . . judicial gloss on the enumerated grounds for vacatur" under FAA); see also Masseau, 2021 VT 9, ¶ 30 (discussing manifest-disregard standard but declining to reach question of whether it applies under VAA).

15

standard to a narrow set of cases secures confidence in the arbitration process. By agreeing to arbitration, parties "waive important rights, including trial by jury, procedural protections offered by the courts, and appellate review by an independent judiciary." Knaresborough Enters., Ltd. v. Dizazzo, 2021 VT 1, ¶ 11, 214 Vt. 32, 251 A.3d 950. As courts have recognized, however, "parties do not agree in advance to submit to arbitration that is carried out in manifest disregard of the law." Schiferle v. Cap. Fence Co., 61 N.Y.S.3d 767, 772 (App. Div. 2017) (quotation omitted). Without manifest disregard, "[i]f the courts merely rubber-stamp arbitrators' decisions . . . litigants will hesitate to entrust their affairs to arbitration." R.E. Bean Constr. Co. v. Middlebury Assocs., 139 Vt. 200, 205, 428 A.2d 306, 309 (1980).

¶ 36.    Second, without this standard, arbitrators could have an incentive not to provide reasoning for their decisions. See Travelers Ins. Co. v. Nationwide Mut. Ins. Co., 886 A.2d 46, 49 (Del. Ch. 2005) (explaining that where error is blatant and obvious, court may "infer the required knowledge of the law and intentionality on the part of the arbitrator" because otherwise "arbitrators would have a positive incentive to refuse to explain their decisions, and the last resort review provided by the possibility of vacatur for manifest disregard . . . would be eviscerated"); see also Halligan v. Piper Jaffray, Inc., 148 F.3d 197, 204 (2d Cir. 1998) (explaining that "when a reviewing court is inclined to hold that an arbitration panel manifestly disregarded the law, the failure of the arbitrators to explain the award can be taken into account"). The narrow framework ensures confidence in arbitration as an alternative to litigation and protects the rights of parties while "guarantee[ing] that review for manifest disregard [does] not grow into the kind of probing merits review that would undermine the efficiency of arbitration." Wachovia, 671 F.3d at 483; see also Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383, 389 (2d Cir. 2003) (explaining that, at time, Second Circuit had vacated only four out of forty-eight cases in which court applied manifest-disregard standard).

16

¶ 37. Here, both elements of manifest disregard are met because the arbitrator chose to ignore the law that required employer to sanction grievant for his misconduct and the applicable legal principle was clearly defined. As to the first element, the arbitrator acknowledged the governing privacy law but nonetheless disregarded the HIPAA Privacy Rule's command requiring employer to sanction grievant. See 45 C.F.R. § 164.308(a)(1)(ii)(C); see Duferco, 333 F.3d at 390 (explaining that to determine arbitrator's awareness of the law, court "impute[s] only knowledge of governing law identified by the parties to the arbitration"). The arbitrator acknowledged the "plethora of laws, regulations and policies with respect to ensuring patient privacy," that these various laws and regulations "impose sanctions on entities that violate the privacy protections," and that employer has to "require that its employees follow such policies on patients' privacy." Despite this acknowledgment, the arbitrator concluded that formal discipline was not warranted without mentioning employer's legal obligation to sanction grievant under the HIPAA Privacy Rule. Thus, the arbitrator "knew of [the] governing legal principle yet refused to apply it or ignored it altogether." Masseau, 2021 VT 9, ¶ 31 (quotation omitted).

¶ 38. There was no reasoned basis for the arbitrator to ignore the law. Although the arbitrator stated that employer's duty to comply with privacy laws had to be balanced against the union's right to defend employees from wrongdoing, the arbitrator acknowledged that "there was no need for [grievant] to have shown [the union representative] the records with the names of the clients identifiable on the records. The clients' names could have been redacted" without compromising the union representative's ability to defend grievant. Moreover, the fact that the disclosure happened in a closed-door meeting does not excuse grievant's actions or alter employer's obligation under HIPPA. The disclosure of private health records in this setting was just as harmful, and undoubtedly just as unwelcome, to the patients involved as a disclosure in some other setting, especially having in mind the disclosure had nothing to do with the patients' treatment but rather with grievant's billing practices. Congress has recognized that privacy in

17

medical records is particularly important for substance-abuse treatment. "Without th[e] assurance [of confidentiality], fear of public disclosure of [substance] abuse or of records that will attach for life will discourage thousands from seeking the treatment they must have if this tragic national problem [of addiction] is to be overcome." Loc. 738, Int'l Bhd. of Teamsters v. Certified Grocers Midwest, Inc., 737 F. Supp. 1030, 1033 (N.D. Ill. 1990) (quotation omitted) (explaining congressional goals behind enactment of Public Health Service Act). It is already difficult for individuals to seek substance-abuse counseling and treatment and ignoring the harm caused by disclosing private health information, as I believe the majority's decision does, could result in a chilling effect in the future on those needing treatment.

¶ 39. The second part of the manifest-disregard test is also met in that the governing law is "well defined, explicit, and clearly applicable to the case." Masseau, 2021 VT 9, ¶ 31 (quotation omitted). The HIPAA Privacy Rule mandates that covered entities "must . . . [e]nsure the confidentiality, integrity, and availability of all electronic protected health information" and "[e]nsure compliance with this subpart by its workforce." 45 C.F.R. § 164.306(a)(1), (4). In accordance with § 164.306, a covered entity "must" implement a sanction policy and "[a]pply appropriate sanctions" against employees who fail to comply with patient-confidentiality policies and procedures. Id. § 164.308(a)(1)(ii)(C). Like "shall," "must" is "imperative or mandatory language" that is "inconsistent with a concept of discretion." State v. Rafuse, 168 Vt. 631, 632, 726 A.2d 18, 19 (1998) (mem.); see also State v. Henderson, 436 S.E.2d 209, 211 (Ga. 1993) ("[T]he plain meaning of 'must' is a command, synonymous with 'shall.' "). The plain language of the Privacy Rule refutes the conclusion that a covered entity may choose not to sanction an employee who violates patient confidentiality.

¶ 40. The majority asserts that employers have flexibility in how to sanction employees for violating HIPAA because the phrase "appropriate sanctions" is not defined by relevant statute or regulation and "necessarily connotes discretion to some extent." Ante, ¶ 20. Relying on a

18

HIPAA treatise, the majority concludes that some HIPAA violations could be sanctioned through training or counseling and therefore the arbitrator did not manifestly disregard the law when it reversed employer's formal discipline. This after-the-fact rationale for the arbitrator's decision is inconsistent with the arbitrator's own factual findings regarding claimant's conduct. Under the rubric of the treatise, "category 1" sanctions such as training and counseling are appropriate for unintentional breaches of privacy or security caused by carelessness. In contrast, "category 2a" is for deliberate unauthorized access, such as "accessing a coworker's information without a legitimate business reason." Here, grievant deliberately accessed and shared private health information of his patients solely for his own purposes. While the arbitrator did not find any malicious intent, there is no question grievant acted deliberately.

¶ 41.   Had the arbitrator applied the HIPAA Privacy Rule, he necessarily would have concluded that employer had just cause to reprimand grievant. See Duferco, 333 F.3d at 390 (explaining that court will "not vacate an arbitral award for an erroneous application of the law if a proper application of law would have yielded the same result"); see also Brooks, 135 Vt. at 569, 382 A.2d at 208 (concluding that just cause existed as matter of law). In fact, the arbitrator essentially concluded that just cause existed for discipline by determining that grievant's conduct breached patient confidentiality, that grievant knew or should have known so, and that employer acted appropriately in raising the issue with him.[7]   Moreover, the arbitrator recognized that

---

[7] The majority's reliance on and discussion of just cause misses the point. Ante, ¶ 22. Just cause is typically used in cases involving termination and involves evaluating whether there was "some substantial shortcoming detrimental to the employer's interests, which the law and a sound public opinion recognize as a good cause for [the employee's] dismissal." In re Brown, 2004 VT 109, ¶ 12, 177 Vt. 365, 865 A.2d 402 (quotation omitted). In some situations, there may be just cause for discipline for a lesser sanction but not for the sanction chosen. Id. ¶ 18. Here, the arbitrator agreed with employer that grievant acted in a way that was detrimental to employer's interest, essentially concurring that employer had just cause to impose some type of discipline. There was, however, no lesser sanction because employer imposed the lowest level of discipline available under the employment contract. If this was the sole error made by the arbitrator, it may not be grounds for reversal since it would amount to an error of law and not a total disregard for the law. The reason this case rises to the level of egregious conduct warranting reversal is that

employer accounted for the mitigating circumstances by issuing grievant a written warning, which the arbitrator characterized as "a very low level of discipline." Nonetheless, the arbitrator deemed a formal reprimand unwarranted because grievant made an "error in judgment" rather than an intentional disclosure and suggested that employer should have initiated informal counseling instead of formal discipline. This conclusion runs contrary to the HIPAA Privacy Rule, which makes no exception based on the intent of the disclosure or the scope of the misconduct. See 45 C.F.R. § 164.308(a)(1)(ii)(C). While the rule provides some discretion to the employer to determine what type of sanction is appropriate under the circumstances, informal counseling is not an available form of discipline under employer's personnel policy or the collective bargaining agreement. And, as explained above, even if less formal discipline was an option for employer, it was not here where grievant's conduct was intentional. Therefore, the arbitrator's conclusion could not satisfy employer's requirement under the HIPAA Privacy Rule and was inconsistent with just-cause principles. Cf. W. Union Tel. Co. v. Am. Commc'ns Ass'n, C.I.O., 86 N.E.2d 162, 188 (N.Y. 1949) (concluding that arbitrator exceeded authority where award prevented employer "from performing duties to the public required by law").

¶ 42.    Because the arbitrator manifestly disregarded the law, I would reverse the superior court and direct the court to vacate the arbitrator's decision. I dissent.

_____
Associate Justice

---

employer's action of sanctioning claimant was not just proper under its employment contract but required by federal law.