Vermont Superior Court
Filed 12/17/24
Chittenden Unit

VERMONT SUPERIOR COURT
Chittenden Unit
175 Main Street
Burlington VT 05401
802-863-3467
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 24-CV-02537

---

Flat Fee, LLC et al v. Northwest Vermont Realtor Association, Inc. et al

---

## DECISION ON MOTIONS TO DISMISS

Plaintiffs were the losing parties in an arbitration of a real estate commission dispute. They filed this action asserting various infirmities in the arbitration process. Ultimately, they seek to vacate the arbitration award. Defendants move to dismiss. Because the request to vacate the award is untimely, the court grants the motions to dismiss.

### Alleged Facts

As alleged in the Complaint, Plaintiff Flat Fee Real Estate, LLC is a real estate brokerage company. Plaintiff Robert Foley is a real estate broker and the owner of Flat Fee. Plaintiff Matthew Havers is a real estate salesperson and agent of Flat Fee.

Defendant Northwest Vermont Realtors Association, Inc. ("the Association") is the local board/chapter of the National Association of Realtors within Chittenden, Franklin, and Grand Isle Counties. Defendant Hickok & Boardman Realty, Inc. is a real estate brokerage company, doing business as Coldwell Banker Hickok & Boardman ("Coldwell Banker"). Coldwell Banker is a member of the Northwest Vermont Realtors Association. Defendant Annemarie Daniels is a real estate broker and owner of Coldwell Banker. Defendant Katherine Wade is a real estate salesperson and agent of Coldwell Banker. All parties to this action are licensed by the State of Vermont.

In May 2023, a homebuyer (unidentified by the Complaint) contacted Ms. Wade to view a home the buyer had seen listed on Zillow. After viewing the house and learning that Coldwell Banker would not negotiate its 3% commission fee, the buyer hired Flat Fee Real Estate, which charged a $3,500 flat fee for its buyer agency services. Ms. Wade contacted the listing agent, Nancy Pritchard of Pall Spera Company Realtors, and asked her to keep her informed if the buyer decided to see the home again with a different agent and if the buyer made an offer on that home. The buyer viewed the home again on June 5, 2023, this time with Mr. Havers, the Flat Fee. Mr. Havers prepared an offer to purchase on behalf of the buyer. Mr. Havers and Ms. Pritchard then negotiated the terms of the offer

and, ultimately, the buyer and seller signed a purchase and sale contract. In the meantime, Pritchard kept Wade informed as requested, and they agreed to "sit tight . . . until it closed." Ex. 4 to Compl.

Over the next month, Mr. Havers had many discussions and communications with the buyer and with Pritchard about the transaction, and coordinated with the closing attorneys. The "Closing Disclosure" includes a line item showing that $18,060 will be paid by the seller from the seller's proceeds to Flat Fee Real Estate. The closing occurred on July 6, 2023. Mr. Havers received an $18,060 check made payable to Flat Fee Real Estate from the seller's funds. Flat Fee then made a rebate check payable to the Buyer for $14,560. At no time before the closing did Ms. Wade or Ms. Pritchard notify Plaintiffs or the buyer that Coldwell Banker would be owed a commission if the buyer purchased the home.

Almost three months after the closing, on October 1, 2023, Coldwell Banker demanded $18,060 from Flat Fee Real Estate. Its demand was accompanied by a "Notice of Arbitration" from Northwest Vermont Realtors Association. Plaintiffs' attorney informed the Association that it had no right to demand that Plaintiffs participate in its alternative dispute resolution process. In response, the Association invoked the "Realtor MLS Arbitration Rule," and offered to connect Plaintiffs' attorney with "PrimeMLS." *See* Ex. 6 to Compl.[1] Plaintiffs' attorney reiterated numerous reasons why the arbitration request was improper, and the "PrimeMLS" CEO threatened to suspend or revoke Flat Fee's access to the MLS listing system if it refused to participate in the Association's arbitration process. Compl. ¶ 70; Ex. 1; Ex. B. To avoid suspension or revocation of their MLS access, "which would have destroyed [their] business," Plaintiffs decided they had no choice but to participate in the arbitration. Compl. ¶ 71.

Plaintiffs challenged the proposed arbitration panel members for various reasons. Compl. ¶ 72–73. The Association apparently rejected those challenges. *See id*. ¶ 74. An arbitration hearing was held on February 1, 2024. That same day, "a panel of Realtors" decided unanimously to award Flat Fee's commission of $3,500, as well as the buyer's rebate of $14,560 to Coldwell Banker. *Id*. ¶ 78.

## Discussion

Plaintiffs initially filed a similar action on April 4, 2024. *See* Docket No. 24-CV-1330. The court dismissed that case for lack of counsel for the Plaintiff LLC. *See* Entry Regarding Mot. (filed May 21, 2024) in Docket No. 24-CV-1330. Plaintiffs then filed this action, with counsel, on July 1, 2024. Defendants now move to dismiss on grounds that this action is untimely. Additionally, the

---

[1] "MLS," or "Multiple Listing System," is the "primary database of all home listings by real estate agents in Vermont." Compl. at 2–3. Although not directly articulated in the Complaint, "PrimeMLS" (formerly named the New England Real Estate Network) is apparently the name of the company that runs the MLS. *See* Ex. 1; Ex. B.

Realtors Association contends that it is not a proper party to the action and is protected by arbitral immunity.

## I. Timeliness

At the core of this action is Plaintiffs' request to vacate the arbitration award pursuant to the Vermont Arbitration Act. *See* Compl. ¶¶ 84(k); 97. "An application to vacate an [arbitration] award shall be made within 30 days after delivery of a copy of the award to the applicant, except that if predicated upon corruption, fraud, or other undue means, it may be made within 30 days after such grounds are known or should have been known." 12 V.S.A. § 5677(c). This limitations period is construed strictly: "our policy is to uphold arbitration awards whenever possible and to prevent arbitration becoming another layer in the litigation process. The short period allowed by statute for challenging an award implements this purpose." *Springfield Tchrs. Ass'n v. Springfield Sch. Directors*, 167 Vt. 180, 187 (1997) (citing 1 Domke on Commercial Arbitration § 33:02 (rev. ed. 1996)); *see also id*. at 189 (holding that even jurisdictional claims are not exempt from time limit); *Howard Ctr. v. AFSCME Loc. 1674*, 2023 VT 6, ¶ 9, 217 Vt. 500 ("arbitration should provide efficient resolution of disputes") (quotation omitted).

The arbitration panel issued its decision on February 1, 2024. Plaintiffs did not file their initial court action until April 4, 2024, well over the 30-day limit. Plaintiffs argue that the arbitration award was not made final by the Realtors Association until March 21, 2024, when the arbitration process was exhausted. Even accepting that argument, however, Plaintiffs then waited until July 1, 2024 to file the current complaint—more than three months after the arbitration award was apparently "made final," and 41 days after the court dismissed the initial complaint.

Plaintiffs maintain that the current complaint "is simply an extension of the April 4 Complaint's challenge to the Award." Pls.' Opp'n to Coldwell Banker Defs.' Mot. to Dismiss at 2. Though they cite no authority to support this assertion, this appears to be a variation of the "relation back" doctrine under V.R.C.P. 15(c) (specifying when "[a]n amendment of a pleading relates back to the date of the original pleading"). Rule 15(c), however, addresses "amendment[s]" of pleadings, not new actions filed after the original action was dismissed. Notably, while the court dismissed the original action without prejudice, it did not explicitly grant leave to amend. *Cf.* Wright & Miller, 6A Fed. Prac. & Proc. Civ. § 1497 (3d ed.) ("Thus, if a motion under Rule 12(b)(6) is granted with leave to amend, the new pleading will speak from the time of the original complaint.") (citing *Hogan v. Pilgrim's Pride Corp.*, 73 F.4th 1150 (10th Cir. 2023)). Nor does the Complaint allege any basis for equitable tolling. *See Doe v. Camacho*, 2024 VT 72, ¶ 38 (Nov. 8, 2024) (stating that equitable tolling

doctrine "may suspend a statute of limitations where the defendant is shown to have actively misled or prevented the plaintiff in some extraordinary way from discovering the facts essential to the filing of a timely lawsuit" or where "the plaintiff timely raised the precise claim in the wrong forum") (quotations omitted). The court further observes that, as a special statutory proceeding, typical methods to avoid a general statute of limitations may not apply in the context of actions to vacate arbitration awards. *See Greenwald v. Shayne*, 910 N.E.2d 536, 543 (Ohio Ct. Common Pleas 2009), *aff'd,* 2010-Ohio-413, ¶ 23 ("savings statute" that applied to general statute of limitations did not apply to special statutory proceeding like arbitration that was "unknown to the common law" and "contain[ed] its own statute of limitations") (quotations omitted).

While Plaintiffs and the Coldwell Banker Defendants appear to agree that the Vermont Arbitration Act applies here, the Association contends that the Federal Arbitration Act applies instead. The federal act has a three-month statute of limitations. Briefly, the federal act applies if the parties' transaction involves or affects interstate commerce. *See generally Masseau v. Luck*, 2021 VT 9, ¶¶ 11–16, 214 Vt. 196. It is not clear which act should apply here. Plaintiff maintains that the real estate transaction took place in Vermont and that all parties to this action are based in Vermont; the Association emphasizes that PrimeMLS is based in New Hampshire, and that the arbitration agreement between Plaintiffs and PrimeMLS provides that it is governed by the laws of New Hampshire. The court need not decide this issue, however, because Plaintiffs filed their current complaint on July 1, 2024—more than three months after the arbitration award was "made final" on March 21, 2024. Thus, Plaintiffs' action was brought outside of the federal act's more forgiving limitations period.

Plaintiffs also contend that, even if their attack on the arbitration award is time-barred, "there are challenges separate from Plaintiffs' relief related to vacating the award that should be allowed to proceed." Pls.' Opp'n at 6. They cite only one example: "that [the] rule cited by NVRA to obtain the commission fee rightfully belonging to Plaintiffs has been declared illegal and violates antitrust laws." *Id*. (citing Compl. ¶ 84(c)–(e)). These allegations, however, are inextricably intertwined with Plaintiffs' attempt to vacate the arbitration award. *See* Compl. ¶¶ 80, 84(a)–(b), (f)–(k). It is not clear what purpose would be served by allowing those allegations to proceed separate from the time-barred request to vacate the arbitration award. Without the teeth of an order vacating the award—which relief is clearly time-barred—any declaration of illegality of the rule in question would be no more than an advisory opinion. *See Doe v. Department of Children and Families*, 2020 VT 79, ¶ 17, 213 Vt. 151 ("The distinguishing feature between a declaratory-judgment action and an advisory opinion is that the former has some conclusive, legal effect."). Equally, Plaintiffs' unjust enrichment claim is a thinly

disguised collateral attack on the arbitration award, and so impermissible. *See, e.g., Sander v. Weyerhaeuser Co.*, 966 F.2d 501, 503 (9th Cir. 1992); *Clarke-St. John v. City of New York*, 83 N.Y.S.3d 549, 552 (N.Y. App. Div. 2018); *Sibley v. Littler Mendelson, P.C.*, 2019 WL 1373599, at *2 (Md. Ct. Spec. App. Mar. 26, 2019) (unpub.). The limitations period "is meaningless if a party to the arbitration proceedings may bring an independent direct action asserting such claims outside of the statutory time period." *Corey v. New York Stock Exch.*, 691 F.2d 1205, 1213 (6th Cir. 1982).

## II. Arbitral Immunity

The Complaint also fails as to the Defendant Realtors Association for the additional reason that it is not a proper party to this action. The Association is protected by arbitral immunity. Generally, "[a]rbitrators enjoy absolute immunity from suit as to all acts or omissions within the scope of the arbitrator's power and the arbitral process." 3 Commercial Arbitration § 75:1. This protection extends to "[a]ll acts within the scope of the ADR process . . . including scheduling the arbitration proceeding, and arbitrators' appointment, even when a panel is improperly selected (in violation of governing rules), or other challenges are raised about an institution's rules concerning the composition of an arbitration panel." *Id*. § 75.4. Thus, such suits against arbitrators are "dismissed as impermissible collateral attacks on the award itself. Rather than filing suit against an arbitrator, the institution[,] or its staff, the redress for negligent acts or omissions is judicial vacatur of an award." *Id*.; *see also Austern v. Chicago Bd. Options Exch., Inc.*, 898 F.2d 882, 886 (2d Cir. 1990) ("the Courts of Appeals that have addressed the issue have uniformly immunized arbitrators from civil liability for all acts performed in their arbitral capacity."); *Droscha v. Shepherd*, 931 N.E.2d 882, 888-89 (Ind. Ct. App. 2010) (dismissing under Rule 12(b)(6) action to vacate arbitration award brought against regional real estate brokers' association that established arbitration panel in dispute between brokers over commission fees, where the plaintiff's claims were "ultimately challenges to the Association's decision-making function with respect to the overall arbitration process and are therefore akin to judicial or quasi-judicial functions subject to immunity").[2]

Plaintiffs list a number of reasons why they think arbitral immunity should not apply here. Essentially, they argue that the Association acted "without any colorable claim of jurisdiction" because it was too biased to be a neutral arbitrator, because Plaintiffs never entered an agreement to arbitrate

---

[2] While it appears that the Vermont Supreme Court has not yet had occasion to explicitly extend judicial immunity to arbitrators, this court fully expects that it would do so. *See*, *e.g.*, *Droscha*, 931 N.E.2d 888–89 ("While judicial and/or quasi-judicial immunity in Indiana has not previously been extended to arbitrators and their sponsors, we see no reason why it should not be. . . . The underlying purpose of the immunity is to preserve judicial independence in the decision-making process. *Id.* The same policies that underlie the grant of absolute judicial immunity to judges justify the grant of immunity to non-judicial officers who perform quasi-judicial functions.).

with Defendants, and because the rules relied upon by the Association have been declared illegal in other courts. None of these reasons establish a basis to negate the application of arbitral immunity here. As noted above, the proper redress for these claimed deficiencies is to seek judicial vacatur of the award, not to sue the arbitrator. *See Int'l Med. Grp., Inc. v. Am. Arb. Ass'n, Inc.*, 312 F.3d 833, 844 (7th Cir. 2002) (holding that arbitration association was immune from suit based on wrongful exercise of jurisdiction). Moreover, the allegations of this case do not fall within the limited and "hypothetical situations where courts have indicated that arbitrators would not be immune," for example, "an arbitrator's decision to accept a bribe" or "where an arbitrator accepts payment for an arbitration, pockets the funds, and then refuses a refund when the arbitration is not performed." *Shamrock Fisheries, LLC v. Manning*, No. 21-CV-10689-ADB, 2021 WL 5811743, at *5 (D. Mass. Dec. 7, 2021) (citing *Int'l Med. Grp.*, 312 F.3d at 844; *Lanza v. Fin. Indus. Regul. Auth.*, 953 F.3d 159, 164 (1st Cir. 2020)).

As for Plaintiffs' contention that they never entered an arbitration agreement in the first place, that is belied by Exhibit 1, which was attached to the Complaint and is therefore incorporated into the Complaint. *Kaplan v. Morgan Stanley & Co.*, 2009 VT 78, ¶ 10 n. 4, 186 Vt. 605 (mem.). Exhibit 1 demonstrates that Plaintiffs did, in fact, sign such a contract with PrimeMLS, Inc. wherein they agreed to "arbitrate disputes with other [PrimeMLS] participants." And Plaintiffs' claim of duress amounts to nothing more than a PrimeMLS officer politely reminding Plaintiffs of the consequences of violating the arbitration agreement that Plaintiffs had signed. *See* Ex. 1; Ex. B.[3] This comes nowhere close to the level of "duress" required to make a contract void or voidable. *See EverBank v. Marini*, 2015 VT 131, ¶¶ 18–25, 200 Vt. 490 (discussing "duress" defense and adopting Restatement (Second) of Contracts §§ 174–76 (1981)); *see also Balogh v. Balogh*, 134 Haw. 29, 44, 332 P.3d 631, 646 (Haw. 2014) ("it is not duress for a party to threaten to do what they had a legal right to do") (quotation and citation omitted).

Order

The court grants the motions. All claims are dismissed with prejudice.

Electronically signed pursuant to V.R.E.F. 9(d): 12/17/2024 3:44 PM

_____
Samuel Hoar, Jr.
Superior Court Judge

---

[3] Exhibit B, submitted by the Association, is the same as Exhibit 1 except that it includes the second page that Exhibit 1 omitted.